**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Avram J. Ellman, | ) CIV 13-1075-PHX-MHB |
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| Carolyn W. Colvin, Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

Pending before the Court is Plaintiff Avram J. Ellman's appeal from the Social Security Administration's final decision to deny his claim for disability insurance benefits and supplemental security income. After reviewing the administrative record and the arguments of the parties, the Court now issues the following ruling.[1]

**I. PROCEDURAL HISTORY**

In early 2011, Plaintiff filed applications for disability insurance benefits and supplemental security income alleging disability beginning January 1, 2008. (Transcript of Administrative Record ("Tr.") at 173, 178-80.) Plaintiff's claims were denied initially and on reconsideration. (Tr. at 73-74, 97-98.) Thereafter, Plaintiff requested a hearing before an administrative law judge, and a hearing was held on February 9, 2012. (Tr. at 24-72.) Afterwards, the ALJ issued a decision finding that Plaintiff was not disabled. (Tr. at 121-

---

[1]Plaintiff's request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. See Fed.R.Civ.P. 78(b).

135.) The Appeals Council denied Plaintiff's request for review, (Tr. at 1-3), making the ALJ's decision the final decision of the Commissioner. This appeal followed.

## II. STANDARD OF REVIEW

The Court must affirm the ALJ's findings if the findings are supported by substantial evidence and are free from reversible legal error. See Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see Reddick, 157 F.3d at 720.

In determining whether substantial evidence supports a decision, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Reddick, 157 F.3d at 720. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d at 720-21.

## III. THE ALJ'S FINDINGS

In order to be eligible for disability or social security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An ALJ determines a claimant's eligibility for benefits by following a five-step sequential evaluation:

(1) determine whether the applicant is engaged in "substantial gainful activity";

(2) determine whether the applicant has a medically severe impairment or combination of impairments;

> (3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;
>
> (4) if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;
>
> (5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). At the fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial gainful work. See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993). The Commission must consider claimant's residual functional capacity and vocational factors such as age, education, and past work experience. Id.

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 1, 2008 – the alleged onset date. (Tr. at 126.) At step two, he found that Plaintiff had the following severe impairments: Obsessive Compulsive Disorder; Attention Deficit Hyperactivity Disorder; Depressive Disorder NOS; Polysubstance abuse, in remission. (Id.) At step three, the ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Commissioner's regulations. (Tr. at 126-27.) After consideration of the entire record, the ALJ found that Plaintiff "has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant has no exertional restrictions due to mental health or side effects of medication. He can do unskilled work in a low social context, defined as no contact with the general public and only necessary contact with supervisors and coworkers." (Tr. at 127-28.) The ALJ determined that Plaintiff "unable to perform any past relevant work," as not all of Plaintiff's past jobs "were performed at the level of substantial gainful activity, ...and [n]one lasted as long as a year and most lasted approximately 4 months, or less." (Tr. at 133.) The ALJ determined that Plaintiff is "capable of making a successful

- 3 -

1 adjustment to other work that exists in significant numbers in the national economy," under
2 the framework of section 204.00 in the Medical-Vocational Guidelines. (Tr. at 134.)

3 Therefore, the ALJ concluded that Plaintiff has not been under a disability, as defined
4 in the Social Security Act, from January 1, 2008, through the date of her decision. (Tr. at
5 134.)

## IV.  DISCUSSION

In his brief, Plaintiff contends that the ALJ erred by: (1) failing to properly weigh medical source opinion evidence, and (2) failing to properly consider his subjective complaints. (Doc. 25.) Plaintiff requests that the Court remand for determination of benefits.

### A.  Medical Source Opinion Evidence

Plaintiff contends that the ALJ erred by failing to properly weigh medical source opinion evidence. Specifically, Plaintiff argues that the ALJ erred "by rejecting assessments of [Plaintiff]'s treating psychiatrist, Lawrence M. Martin, M.D., and treating therapist Ellen Canacakos, Licensed Professional Counselor, relying instead upon opinions of state agency employees, Randall J. Garland, Ph.D., and Raymond Novak, M.D., who reviewed a limited record as part of the initial and reconsideration determinations, but did not perform personal examinations." (Doc. 25, at 1.)

"The ALJ is responsible for resolving conflicts in the medical record." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008). Such conflicts may arise between a treating physician's medical opinion and other evidence in the claimant's record. In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is entitled to "substantial weight." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)). A treating physician's opinion is given controlling weight when it is "well-supported by medically accepted clinical and laboratory

1  diagnostic techniques and is not inconsistent with the other substantial evidence in [the
2  claimant's] case record." 20 C.F.R. § 404.1527(d)(2). On the other hand, if a treating
3  physician's opinion "is not well-supported" or "is inconsistent with other substantial
4  evidence in the record," then it should not be given controlling weight. Orn v. Astrue, 495
5  F.3d 624, 631 (9th Cir. 2007) (citation omitted).

6  If a treating physician's opinion is not contradicted by the opinion of another
7  physician, then the ALJ may discount the treating physician's opinion only for "clear and
8  convincing" reasons. See Carmickle, 533 F.3d at 1164 (quoting Lester, 81 F.3d at 830-31).
9  If a treating physician's opinion is contradicted by another physician's opinion, then the ALJ
10 may reject the treating physician's opinion if there are "specific and legitimate reasons that
11 are supported by substantial evidence in the record." Id. (quoting Lester, 81 F.3d at 830).

12 Since the opinions of Dr. Martin and Ms. Canacakos were contradicted by reviewing
13 doctors' opinions, as well as, other objective medical evidence, the specific and legitimate
14 standard applies.[2]

15 Historically, the courts have recognized the following as specific, legitimate reasons
16 for disregarding a treating or examining physician's opinion: conflicting medical evidence;
17 the absence of regular medical treatment during the alleged period of disability; the lack of
18 medical support for doctors' reports based substantially on a claimant's subjective complaints
19 of pain; and medical opinions that are brief, conclusory, and inadequately supported by
20 medical evidence. See, e.g., Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Flaten
21 v. Secretary of Health and Human Servs., 44 F.3d 1453, 1463-64 (9th Cir. 1995); Fair v.
22 Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

---

[2]As a therapist, Ms. Canacakos is not an acceptable medical source. See 20 C.F.R. §404.1513(d)(1). Such sources are not entitled to the same deference as acceptable medical sources, and, in discounting the testimony from sources who are not acceptable medical sources, the ALJ must provide "germane" reasons. Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).

- 5 -

1   Plaintiff first began seeing Dr. Martin on April 28, 2008, after having been referred
2  by Plaintiff's psychologist. (Tr. at 311.) Dr. Martin continued to see Plaintiff, as reflected
3  by his progress notes, intermittently through June, 2011. (Tr. at 255-313, 328-29.)
4   On the Medical Assessment of the Patient's Ability to Perform Work Related Activity
5  form, filled out by Dr. Martin on June 11, 2011, he rated Plaintiff's limitation on his ability
6  to understand, carry out, and remember instructions as moderately severe, the limitation on
7  his ability to respond appropriately to supervision as moderate, the limitation on his ability
8  to respond appropriately to co-workers as moderately severe, the limitation on his ability to
9  respond to customary work pressures as severe, and the limitation on his ability to perform
10 tasks as severe. (Tr. at 330-31.) Dr. Martin also assessed as severe the limitation on
11 Plaintiff's ability to complete a normal workday/workweek without interruptions from
12 psychologically based symptoms and to perform at a consistent pace without an unreasonable
13 number/length of rest periods. (Id., at 331.) He stated that the speed of even repetitive tasks
14 "has been [Plaintiff]'s major limitation." (Id.)
15   Dr. Martin saw Plaintiff on June 28, 2011, and noted Plaintiff's diagnosis as
16 obsessive-compulsive disorder, attention deficit disorder, and depressive disorder, and
17 polysubstance abuse by history. (Tr. at 328.) Dr. Martin noted that Plaintiff's depressive
18 disorder was in remission. (Id.) He indicated that Plaintiff's mood and demeanor were
19 "relaxed and upbeat," and that there was no evidence of "disorder of speech, thought form
20 or content, perception, gross cognition, or attention," and that Plaintiff's "[i]nsight and
21 motivation [were] intact." (Id.) Plaintiff reported going to AA meetings, about 3 times a
22 week, and was volunteering at a Head Start program doing data entry for three half-days a
23 week. (Id.)
24   Ms. Canacakos provided a narrative report on May 20, 2011. (Tr. at 315-16.) She
25 indicated that Plaintiff had been a weekly therapeutic patient of hers since November, 2006.
26 (Tr. at 314.) In her report she indicated that Plaintiff was diagnosed with attention deficit
27 disorder, obsessive/compulsive thought disorder and generalized anxiety, and that Plaintiff
28 also struggles with social anxiety and has had some situational episodes of depression. (Id.)

Ms. Canacakos notes that during her the time Plaintiff has been her patient, that he had been hired and fired from a number of jobs - food delivery, working at a local resort as a passenger carrier, a hospital campus bus driver, a temporary data entry job at a bank, and at a company named Star, where Plaintiff was responsible for date entry, as well as occasionally answering the phones, assisting with customer questions, and filing. (Tr.at 315.) She states that Plaintiff was unable to maintain two of his jobs because Plaintiff's "psychological issues resulted in personality disputes that he was unable to manage." (Id.) In one instance, he was fired after he "mouthed off to [a] supervisor who [Plaintiff] believed insulted him," and in the other, he quit because his co-workers displayed behaviors that resulted in obsessional anger that Plaintiff was unable to mange. (Id.) Ms. Canacakos concludes that Plaintiff has been unable to retain a job due to his obsessive disorder and ADD, that cause the problems as noted above, and that also cause "obsessional fear" to set in and cause him to work "slower," and, in addition, his social anxiety prevents him from normal workplace social interactions. (Tr. at 315-16.)

On the Medical Assessment of the Patient's Ability to Perform Work Related Activity form, filled out by Ms. Canacakos on June 11, 2011, she rated Plaintiff's limitation on his ability to relate to other people as moderate, the estimated degree of restriction on daily activities as mild, the estimated degree of deterioration in personal habits as mild, and estimated the degree of constriction of interests of the claimant as moderately severe. (Tr.at 342.) Ms. Canacakos rated the limitations on Plaintiff's ability to understand, carry out, and remember instructions, respond appropriately to supervision and to co-workers as mild, and to respond to customary work pressures as moderately severe. (Id.) She rated Plaintiff's limitation on performing simple tasks as none, repetitive tasks as mild, and complex or varied tasks as severe. (Tr. at 343.) She also rated Plaintiff's limitations on completing a normal workday/workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number/length of rest period as severe. (Id.)

1          On January 30, 2012, Dr. Martin submitted a narrative report to "substantiate the
2  ongoing disability of [Plaintiff]." (Tr. at 245-46.) Dr. Martin writes that Plaintiff "suffers
3  from a variety of lifelong psychiatric and neurologic disorders," and that "[o]ther than
4  working as a pizza delivery person several years ago, he has not been able to hold any
5  employment." (Tr. at 245.) This, despite being involved in a work training program to do
6  clerical work, but "[h]is symptoms of obsessive compulsive disorder [] caused his work to
7  be so slow that he was terminated from the [] program." (Id.) Dr. Martin listed Plaintiff's
8  diagnoses as:  obsessive compulsive disorder, depressive disorder, attention deficit
9  hyperactivity disorder, learning disability, and polysubstance dependence currently in long-
10 term remission. (Id.) Plaintiff is prescribed Sertraline at 3-times the maximum dose to
11 control his OCD, as well as Geodou, and Adderall. (Id.) Although Dr. Martin notes that
12 Plaintiff has demonstrated behavioral improvement, "his abilities to remain focused and to
13 not be obsessive in the workplace both effectively disable him from gainful employment."
14 (Id.) Dr. Martin states that Plaintiff is compliant with his treatment, and continues to attend
15 AA on a regular basis. (Id.) Although Dr. Martin notes that Plaintiff's mood is stable and
16 he enjoys helping with chores around the house as well as volunteer work, "these behaviors
17 do not translate to him being employable. The pace of a regular work setting would likely
18 generate higher levels of anxiety and cause his OCD symptoms to be worse, slowing him
19 down even further." (Tr. at 246.)

20         On January 30, 2012, Ms. Canacakos wrote in an update to her May 20, 2011 report,
21 that Plaintiff had been volunteering, for the better part of a year, with the non-profit
22 organization, Head Start, doing primarily data entry, although on rare occasion helps copy
23 and compile booklets. (Tr. at 241.) Plaintiff's volunteer commitment is 3 hours a day, 3
24 days a week. (Id.) Because his hours are intentionally chosen, and his attendance is
25 consistent, his work is extremely valued by the organization. (Tr. at 242.) Because Head
26 Start communicates this appreciation to Plaintiff on a regular basis, Ms. Canacakos believes
27 that makes a "material difference to Plaintiff's ability to perform without the emotional dis-
28 regulation that de-rails [Plaintiff]'s ability to perform." (Id.) Another factor that helps

- 8 -

1 Plaintiff succeed in this setting is the fact that Plaintiff works just 3 hours/3 days a week, and
2 that on those occasions when he has been asked to work longer, Plaintiff reported an increase
3 in stress that had a negative impact on his performance. (Id.) Ms. Canacakos notes also that
4 Plaintiff's status as a volunteer means that Head Start is very understanding and
5 accommodating and won't measure Plaintiff's performance against standards that are set in
6 most traditional employment settings. (Id.) Thus, Plaintiff will not experience criticism or
7 feelings of failure which then minimizes the distress that triggers anxiety or obsessive
8 behaviors. (Id.) Ms. Canacakos concludes that, in the absence of these unique features and
9 accommodations attendant to Plaintiff's volunteer position, Plaintiff would "experience
10 emotional disruptions that would materially impair workplace performance and productivity,
11 which would predictably lead to an inability to retain employment in that setting." (Tr. at
12 243.)

13 In June, 2011, as part of the administrative proceedings, non-examining physician
14 Randall Garland Ph.D., reviewed Plaintiff's medical records. Dr. Garland noted that Plaintiff
15 reported relatively independently managing activities of daily living, but had problems with
16 concentration, understanding, following instructions and handling stress. (Tr. at 82.) He also
17 noted that Plaintiff has some difficulties with social interaction and obsessional intrusions.
18 (Id.) Dr. Garland opined that Plaintiff appears to benefit from psychiatric treatment, noting
19 that the mental status examinations by Dr. Martin were typically benign. (Id.) Overall, Dr.
20 Garland stated that Plaintiff should be able to meet the basic mental demands of unskilled
21 work in a low social context. (Id.)

22 On reconsideration, on September 15, 2011, non-examining physician Raymond
23 Novak, M.D. also noted that Plaintiff's reporting of his managing of his activities of daily
24 living, and his problems with concentration, understanding, following instructions &
25 handling stress, and has some difficulties with social interaction and obsessional intrusions,
26 and that this can cause Plaintiff to perform slower. (Tr. at 107.) Dr. Novak opined that
27 Plaintiff's allegation that his depression had worsened and that he is unable to attend to his
28 personal needs consistently was not supported by Dr. Martin's mental status examinations.

1    (Id.) Dr. Novak noted further that Plaintiff had stable mental health exams and did not have
2    any change to his psychiatric medication regimen, and that he is volunteering at HeadStart
3    3 days per week doing data entry, and being supportive with program for others. (Id.) Dr.
4    Novak affirmed Dr. Garland's prior finding. (Id.)

5          In his evaluation of the objective medical evidence, the ALJ first addressed Dr.
6    Martin's opinion stating, "[t]he undersigned accords little weight to Dr. Martin's opinion that
7    the claimant is disabled," as "that opinion is reserved to the Commissioner." (Tr. at 132.)
8    The ALJ stated that Dr. Martin's opinion in his June 15, 2011 report that Plaintiff was
9    severely impaired in work-related areas was in contrast to Ms. Canacakos's opinion in the
10   same report that Plaintiff had moderately severe limitation in responding to customary work
11   pressures, and that Plaintiff was severely limited in his ability to complete a normal
12   workday/workweek without interruptions from psychologically based symptoms and to
13   perform at a consistent pace without an unreasonable number/length of rest periods.
14   Although these reports may be in "contrast," they are not wholly inconsistent. The ALJ
15   noted that in January, 2012, Ms. Canacakos reported that Plaintiff was able to perform only
16   in a highly supportive work environment where he did not receive any negative feedback,
17   but the ALJ does not explain how that opinion factored in to her weighing of Ms.
18   Canacakos's opinion.

19         The ALJ then considered the statements of Plaintiff, that stress in the workplace
20   caused him to lose focus and become very slow in his pace of work, that he is a perfectionist
21   and when he makes a mistake he must start over again, that he has had such a "bad day" once
22   every two weeks and is frustrated and angry once a week. The ALJ noted that Plaintiff was
23   fired from one job due to talking back inappropriately to a supervisor who he felt had treated
24   him disrespectfully, and that Plaintiff's father confirmed that Plaintiff is very sensitive to
25   criticism. The ALJ does not explain how these facts are considered in the weighing of the
26   medical evidence.

27         The ALJ then summarizes by stating that "[t]he undersigned has considered the
28   statements of the claimant, his father, his treating psychiatrist and treating counselor in

1  additional to the other evidence in this case."³ In this paragraph, the ALJ notes that Plaintiff
2  had been successful in his volunteer position, and that Plaintiff was feeling better about
3  himself, and that even when he lost his job via the vocational rehabilitation program, the
4  counselor's notes indicated that they had good things to say about Plaintiff. The ALJ further
5  notes that Plaintiff is doing well on his current medication regimen, and that Dr. Martin's
6  clinic notes show that he is stable and the mental status examinations have been
7  unremarkable. Finally, the ALJ asserts that Plaintiff has improved in his overall level of
8  functioning as evidenced by his activities and the treatment notes since the assessments by
9  Drs. Garland and Novak.

10  The ALJ concludes by according substantial weight to the opinions of nonexamining
11  Drs. Garland and Novak, and some, but less, weight to the opinions of Dr. Martin and Ms.
12  Canacakos. The Court finds that, although the ALJ extensively recorded the medical source
13  assessments and opinion evidence, she did identify clearly the conflicts in the evidence that
14  she weighed, and, after weighing the evidence, how she reached the conclusion that one
15  opinion should be given more weight than the other. The ALJ must *resolve* conflicts and
16  ambiguities in the evidence. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). The
17  ALJ's conclusion was clear - her reasoning was not. The ALJ did not give specific and
18  legitimate reasons, based on substantial evidence in the record, for discounting Dr. Martin's
19  opinion, nor "germane" reasons for rejecting Ms. Canacakos's opinions. In particular, the
20  ALJ's reasons for according less weight to the opinion of Dr. Martin was not sufficiently
21  clear, particularly given the ALJ's failure to consider the opinions of Drs. Garland and Novak
22  in light of the subsequent reports of Dr. Martin.[4]

23

24  [3]The ALJ notes that Plaintiff "seems to have people around him who foster him to be
25  disabled." (Tr. at 133.) Nothing in the record appears to support that statement.

26  [4]The ALJ stated also that she gave "little weight" to Dr. Martin's "opinion" that
    Plaintiff is disabled because that opinion is reserved for the Commissioner. If the ALJ gave
27  "little weight" to the whole of Dr. Martin's assessment because of this opinion, there would
    be error. Reddick, 157 F.3d at 725. The ALJ does not, as evidenced by his further
28  discussion of Dr. Martin's reports and treatment notes, and his hypothetical, incorporating

- 11 -

1    In summary, the Court finds that the ALJ erred by rejected the treating physician's opinion without setting forth specific and legitimate reasons, supported by substantial evidence, and rejected the treating therapist's opinion without giving germane reasons for doing so.

## B.     Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ erred in rejecting his subjective complaints in the absence of clear and convincing reasons for doing so.

If there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Lingenfelter v. Astrue, 504 F.3d 1028, 1036-37 (9th Cir. 2007) (citations omitted). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) (quoting Lester, 81 F.3d at 834).

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see Orn v. Astrue, 495 F.3d 625, 637-39 (9th Cir. 2007).[5]  The ALJ also considers "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among

---

Dr. Martin's assessment, to the vocational expert. (Tr. at 60.)

[5]  With respect to the claimant's daily activities, the ALJ may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of her day performing household chores or other activities that are transferable to a work setting. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). The Social Security Act, however, does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication. See id.

- 12 -

1  other matters, the nature, onset, duration, and frequency of the claimant's symptom;
2  precipitating and aggravating factors; [and] functional restrictions caused by the symptoms
3  ... ." Smolen, 80 F.3d at 1284 (citation omitted).

4  Plaintiff was represented by counsel at the 2012 administrative hearing. (Tr. at 24.)
5  He testified that he began to feel much more stable after seeing Dr. Martin in 2008. (Tr. At
6  37.) He was working at a vocational rehabilitation program that helped him develop skills
7  to work in an office. (Id.) Plaintiff then obtained a job with Magellan doing data entry,
8  working 20 hours a week, but that his obsession would cause him to have bad days, where
9  he would be slower and distracted. (Tr. at 39-40.) Plaintiff testified that about one day every
10 two weeks he would be completely unproductive. (Id.) Plaintiff also testified that he
11 volunteered at Head Start and works there three days a week for 3 hours a day, and that his
12 work is considered very helpful, and that he also is writing a screen play. (Tr. at 41, 49.)

13 As far as daily living activities, the ALJ noted that Plaintiff is able to maintain
14 grooming and care for himself, and that he lives alone in a guesthouse behind his parents'
15 home. (Tr. at 128.) Plaintiff's father noted that Plaintiff is able to care for his personal
16 needs, can do yard work under supervision, and do laundry and cleaning up from dinner
17 preparation. (Tr. at 129.) Plaintiff drives a car and shops in stores, and is able to manage
18 money on a cash basis. (Id.) Plaintiff is able to e-mail, write letters and occasionally do
19 things in person. (Id.)

20 The ALJ concludes that "[Plaintiff]'s statements and those of his father Ira Elman
21 concerning the intensity, persistence and limiting effects of these symptoms are not credible
22 to the extent they are inconsistent with the [] residual functional capacity assessment." (Tr.
23 at 132.) As the ALJ did not find evidence of malingering, she can reject the claimant's
24 testimony about the severity of his symptoms only by offering specific, clear and convincing
25 reasons for doing so. Having reviewed the record, the Court finds that the ALJ did not make
26 extensive credibility findings or identify several clear and convincing reasons supported by
27 the record for discounting Plaintiff's statements regarding his limitations. The ALJ recounts
28 what Plaintiff reports in his daily living activities and in his testimony, but does not explain

how these statements are incredible or inconsistent with other evidence. The ALJ's only stated basis for discounting Plaintiff's reported limitations is that they may ("to the extent they are") be inconsistent with the residual functional capacity assessment.

This is not a proper basis for discounting Plaintiff's statements, as the RFC assessment is not evidence that bears on his credibility. See Leitheiser v. Astrue, 2012 WL 967647 at *9 (D.Or. March 16, 2012) ("Dismissing a claimant's credibility because it is inconsistent with a conclusion that must itself address the claimant's credibility is circular reasoning and is not sustained by this court."); Vasquez v. Astrue, No. CV 11-2406-PHX, at 14 (D.Ariz. February 8, 2013); 20 CFR §416.945(a)(3) (claimant's statements, among other factors, considered in assessing RFC).

In summary, the Court concludes that the ALJ has not supported her decision to discredit Plaintiff's reported limitations with specific, clear and convincing reasons.

**C.     The Court Remands for Further Proceedings.**

Although the ALJ set forth some proper explanations for her conclusions, she committed several errors as well. The Court finds that either one of the ALJ's errors was consequential to the ALJ's finding that Plaintiff is not disabled, and therefore undermine the ALJ's ultimate conclusion. See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054-56 (9th Cir. 2006) (reviewing Ninth Circuit precedent regarding harmless error and concluding that the overriding consideration is whether an error "was inconsequential to the ultimate nondisability determination."). Accordingly, the Court remands the case to the ALJ for further consideration and explanation.

Plaintiff argues that the Court should exercise its discretion to remand for an award of disability benefits. (Doc. 25, at 32.) "The decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court." Reddick, 157 F.3d at 728 (citation omitted). "'[G]enerally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed.'" Ghokassian v. Shalala, 41 F.3d 1300, 1304 (9th Cir. 1994) (citing Varney v. Sec. of Health and Human Serv., 859 F.2d 1396, 1399

(9th Cir. 1988)). In this case, further administrative proceedings would serve the interest of allowing the ALJ to set forth sufficiently clear explanations for her weighing of the medical source evidence and the weighing of, and the credibility assessment of Plaintiff's subjective complaints.

The Court, in its discretion, remands for further proceedings consistent with this opinion. Remand for a payment of benefits is not warranted because there are outstanding issues that must be resolved before a proper disability determination can be made. See Varney, 859 F.2d at 1401. Moreover, the errors the Court has noted concern the sufficiency of the ALJ's explanations – not the accuracy of her conclusions.

**IT IS ORDERED** reversing the decision of the Commissioner of Social Security and remanding the case to the Commissioner for further proceedings consistent with this Order.

DATED this 19th day of August, 2014.

_Michelle H. Burns_
Michelle H. Burns
United States Magistrate Judge